[Cite as *State v. Owens*, 2022-Ohio-2908.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No.  L-21-1148

    Appellee                                    Trial Court No.  CR0201901763

v.

Ronald Louis Owens, Jr.                  **DECISION AND JUDGMENT**

    Appellant                                    Decided:  August 19, 2022

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Grant C. Kozy, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a jury trial, defendant-appellant, Robert L. Owens, Jr., appeals the

August 3, 2021 judgment of the Lucas County Court of Common Pleas, convicting him

of failure to comply with an order or signal of police, and sentencing him to 30 months in

prison.  For the following reasons, we affirm the trial court judgment.

# I.     Background

{¶ 2} On the night of March 6, 2019, Nicholas Bocik, a Toledo Police Detective, was working the gang task force unit. He was driving a limited marked vehicle—a black Ford Explorer—with lights on the exterior and push bars on it. At approximately 11:30 p.m., Bocik initiated a stop of Robert Owens's vehicle after observing that the taillights were not on. To do so, he turned on the lights in the limited marked vehicle, which "activate all around" the vehicle.

{¶ 3} Bocik and his partner approached Owens's car. Rather than the traditional patrol uniform, Bocik was wearing a long-sleeved shirt with Toledo Police Department patches on the arms and a vest carrier. He told Owens the reason for the stop, and requested his driver's license. Owens said that he did not have his license with him, so Bocik asked for his name, birthdate, and social security number. Bocik and his partner returned to their vehicle and entered the information into LEADS and NORIS. There was "some type of issue with the identification" (in fact, the information Owens provided was false), so Bocik returned to Owens's vehicle to confirm that he had written down the information correctly. Owens repeated the same information to Bocik, so Bocik assumed that he incorrectly entered it and began walking back to his vehicle to try again. Owens sped off.

{¶ 4} Bocik and his partner got back in their vehicle and pursued Owens. The lights on the Explorer were already on and Bocik activated the siren. Owens ran red

2.

lights and stop signs while being chased. He sped through residential neighborhoods and down roads where cars were parked along the sides of the streets. Eight to ten other officers joined the pursuit in some capacity. Bocik's unmarked vehicle was initially the primary unit in the pursuit, but his vehicle experienced mechanical issues, requiring that the pursuit be relinquished to another unit. The dashboard camera in Bocik's vehicle recorded the encounter with Owens and his portion of the pursuit.

{¶ 5} Detective Matthew Sulick was also working the gang task force on March 6, 2019. He and his partner, Detective Robert Bacone, joined in the pursuit of Owens's vehicle and took over as the primary unit after Bocik's vehicle experienced mechanical difficulties. Sulick had his lights and siren on, but Owens did not stop. Sulick observed that Owens's taillights were not on, he was speeding, he failed to stop at a stop sign, and he did not use turn signals. At some point, another police cruiser picked up the pursuit and Sulick turned off the lights and sirens. He and his partner remained close in case they were needed as backup. The dashboard camera in Sulick's vehicle recorded his portion of the pursuit.

{¶ 6} Sergeant Samantha Snowberger was working as a K-9 handler on March 6, 2019, and was also involved in the pursuit in her Ford Crown Victoria cruiser. Her vehicle became the primary unit for a period of time. Owens was driving through a residential area near Toledo Hospital where cars were parked along the street and other motorists were traveling; he was speeding and failed to stop at stop signs. Snowberger

3.

spent the majority of the time trying to catch up to Owens, but she was never able to pull him over and was not present at his arrest. As a K-9 handler, Snowberger could not remain the primary unit in pursuit, so she passed the pursuit off to another marked vehicle. The dashboard camera in Snowberger's cruiser recorded her portion of the pursuit.

{¶ 7} Owens was charged with failure to comply with an order or signal of police, a violation of R.C. 2921.331(B), (C)(1) and (C)(5)(a)(ii), a third-degree felony (Count 1); obstructing official business, a violation of R.C. 2921.31(A) and (B), a second-degree misdemeanor (Count 2); resisting arrest, a violation of R.C. 2921.33(A) and (D), a second-degree misdemeanor (Count 3); and falsification, a violation of R.C. 2921.13(A)(3) and (F)(1), a first-degree misdemeanor (Count 4). The state dismissed Counts 2, 3, and 4 before trial. Count 1 was tried to a jury. The jury convicted Owens of Count 1, as well as the lesser included offense of failure to comply with an order or signal of police, a violation of R.C. 2921.331(B),(C)(1), and (C)(1)(3), a first-degree misdemeanor. The court sentenced Owens to 30 months in prison and three years' discretionary postrelease control.

{¶ 8} Owens appealed. He assigns the following errors for our review:

> Assignment of Error One: Defense counsel rendered ineffective assistance in violation of the right to counsel given by the U.S Constitution

4.

and the Ohio Constitution, for failing to object to an officer's testimony as that officer was driving a "limited marked" car.

Assignment of Error Two: Mr. Owens' conviction for third-degree failure to comply is against the manifest weight of the evidence.

## II.    Law and Analysis

{¶ 9} In his first assignment of error, Owens argues that his trial counsel was ineffective because he did not seek to exclude Bocik's testimony as incompetent under R.C. 4549.14 and Evid.R. 601(B)(4). He argues in his second assignment of error that his conviction was against the manifest weight of the evidence because the state failed to prove that he operated his vehicle in such a manner as to cause a substantial risk of serious physical harm to persons or property, as required for a conviction under R.C. 2921.331(C)(5)(a)(ii). We address each of these assignments in turn.

### A. Ineffective Assistance

{¶ 10} In his first assignment of error, Owens argues that trial counsel was ineffective because he failed to object to Bocik's testimony as incompetent by either filing a motion to suppress or a motion in limine. He claims that because Bocik was driving a limited marked vehicle, was not dressed in patrol uniform, and "was not in a car compliant with R.C. 4549.13," he was "incompetent to testify under R.C. 4549.14" and Evid.R. 601(B)(4). Owens maintains that if such a motion had been filed, it likely would

5.

have been granted and there is a reasonable probability that the outcome of the proceedings would have been different.

{¶ 11} The state responds that Bocik was not on duty for the primary purpose of enforcing traffic laws—he was assigned to the gang task force. He was wearing a uniform, but because of the cold weather, his uniform was covered, he clearly identified himself as a police officer, and he activated his lights and siren in the limited marked vehicle in order to effectuate the stop. Finally, the state insists that even if Bocik's testimony had been excluded, Officer Matthew Sulick or Sergeant Samantha Snowberger would have been able to provide ample testimony to prove all the elements of the offense.

{¶ 12} Properly licensed Ohio lawyers are presumed competent. *State v. Banks*, 9th Dist. Lorain No. 01CA007958, 2002-Ohio-4858, ¶ 16. In order to prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result. *State v. Shuttlesworth*, 104 Ohio App.3d 281, 287, 661 N.E.2d 817 (7th Dist.1995). To establish ineffective assistance of counsel, an appellant must show "(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d

6.

674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002).

{¶ 13} Owens claims that because the limited marked vehicle did not meet the statutory requirements under R.C. 4549.13, Bocik was not competent to testify under R.C. 4549.14 and Evid.R. 601(B)(4). Under R.C. 4549.13, a vehicle used by an officer, "while said officer is on duty for the exclusive or main purpose of enforcing the motor vehicle or traffic laws of this state," and "provided the offense is punishable as a misdemeanor," must be "marked in some distinctive manner or color" and must be "equipped with * * * at least one flashing, oscillating, or rotating colored light mounted outside on top of the vehicle." R.C. 4549.14 provides that if an officer "on duty exclusively or for the main purpose of enforcing" misdemeanor motor vehicle or traffic laws arrests or assists in the arrest of a person charged with violating those laws, he or she "is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was using a motor vehicle not marked in accordance with [R.C.] 4549.13." *See also* Evid.R. 601(C)(4).

{¶ 14} The main issue we must address here is whether Bocik was "on duty for the exclusive or main purpose of enforcing the motor vehicle or traffic laws." Owens first describes Bocik's testimony as "unclear" whether he was on duty for the exclusive or main purpose of enforcing the motor vehicle or traffic laws, but then appears to concede that Bocik "wasn't on duty for the 'exclusive' purpose of making traffic stops." He

7.

points to Bocik's testimony that whether he was "looking to do traffic stops on a regular basis" depended on whether he "see[s] something blatant"—like no taillights—or some other safety concern.

{¶ 15} In *State v. Huth*, 24 Ohio St.3d 114, 493 N.E.2d 961 (1986), a sheriff's deputy was working his assigned duty as a security guard at the airport. He was driving a brown and white Chevrolet Suburban that was equipped with a siren, spotlight, and police lights, but was not marked in a "distinctive manner or color" as required under R.C. 4549.13 for vehicles used by traffic officers. While patrolling airport property, the deputy saw the defendant run a stop sign. He attempted to pull her over, but she fled before finally stopping. Before trial, the defendant sought to exclude his testimony as incompetent under R.C. 4549.14 and former Evid.R. 601(C).

{¶ 16} The Ohio Supreme Court recognized that "R.C. 4549.14 was enacted to provide uniformity in traffic control and to curb the 'speed traps' that were often operated by municipal and township peace officers in unmarked cars." *Huth* at 115-116. But, the court emphasized, it was not intended to inhibit all police officers, except those primarily on traffic duty, from arresting a person violating traffic or motor vehicle laws." *Id.* at 116. Because the deputy's vehicle was not marked in accordance with R.C. 4549.13, the court explained that his competency to testify hinged upon whether he was "on duty for the exclusive or main purpose of enforcing traffic laws." *Id.* at 115, citing former Evid.R. 601(C).

8.

{¶ 17} The court interpreted "'on duty exclusively or for the main purpose of enforcing * * * [motor vehicle or traffic] laws' in R.C. 4549.14 and similar language in [former] Evid.R. 601(C) to refer to the officer's main purpose for his whole period of duty and not to his duty during the apprehension and arrest of the suspect." *Id.* It concluded that an officer's decision to pursue and arrest a driver for a traffic offense "[does] not change the 'main purpose' of his law enforcement duty as referred to in R.C. 4549.14 and [former] Evid.R. 601(C)." *Id.* It found that the deputy's main duty was airport security—not traffic law enforcement—therefore, he was competent to testify.

{¶ 18} Similarly, in *City of Columbus v. Stump*, 41 Ohio App.2d 81, 84-85, 322 N.E.2d 348 (10th Dist.1974), the court found that if an officer's assignment included both narcotics control efforts and "the patroling of the city for protection against the many forms of law breaking," then "it cannot be said that traffic control was the 'main purpose' of his assignment that night." The court in *Cleveland v. Watson*, 8th Dist. Cuyahoga No. 82162, 2003-Ohio-5382, ¶ 12, citing *Columbus v. Stump*, 41 Ohio App.2d 81, 322 N.E.2d 348 (1974), also found that "[a] police officer who, while engaged in an assignment unrelated to the enforcement of traffic laws, observes a violation of such laws and makes an arrest therefor will not be precluded by R .C. 4549.14 and 4549.16 from testifying with regard to such violation on the basis that he was wearing plain clothes and driving an unmarked vehicle at the time of the arrest."

9.

{¶ 19} Here, Bocik testified that he was working the gang task force unit. While he testified that he could nevertheless make traffic stops when he saw a safety concern, such as a vehicle driving without taillights, the main purpose for his whole period of duty was not to enforce motor vehicle or traffic laws. Accordingly, we find that Bocik was competent to testify, and counsel was not ineffective for failing to challenge his competence. *See also State v. Ward*, 6th Dist. Erie No. E-79-27, 1979 WL 207342, *2 (Nov. 16, 1979) ("[E]ven though Sergeant Thompson was not in a marked vehicle, at the time of the arrest he was not '* * * on duty for the exclusive or main purpose of enforcing the motor vehicle or traffic laws of this state,' (R.C. 4549.13). Therefore, [he] was not precluded from testifying in this case [under] R.C. 4549.13 or R.C. 4549.14."); *W. Unity v. Hill*, 6th Dist. Williams No. WM-92-016, 1993 WL 306574, *5 (Jun. 30, 1993).

{¶ 20} In any event, we agree with the state that even if counsel would have successfully challenged Bocik's competence to testify, there was no reasonable probability that the proceeding's result would have been different. This is because both Sulick and Snowberger testified and authenticated dash-cam videos showing that Owens operated his vehicle "so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop," and, in doing so, "caused a substantial risk of serious physical harm to persons or

10.

property." R.C. 2921.331(B) and (C)(5)(a)(ii). We discuss this conclusion more fully in addressing Owens's second assignment of error.

{¶ 21} We find Owens's first assignment of error not well-taken.

## B. Manifest Weight

{¶ 22} In his second assignment of error, Owens argues that his conviction of third-degree failure to comply was against the manifest weight of the evidence. Specifically, he claims that the state failed to prove that he operated his vehicle in such a manner as to cause a substantial risk of serious physical harm to persons or property as required for a conviction under R.C. 2921.331(C)(5)(a)(ii). Owens insists that officers testified that according to Toledo Police Department policies, a police chase should be terminated if the officers believed that there was a danger or a substantial risk of harm. He maintains that there was no evidence that any harm resulted to persons or property, there were no adverse weather or pavement conditions, no witness observed any pedestrians on the street, it was late and few cars were on the road, all of the vehicle's lights and signals were operational, and officers did not terminate the chase. Accordingly, he claims, the state did not demonstrate a substantial risk of serious physical harm to persons or property.

{¶ 23} The state responds that the weight of the evidence supports Owens's conviction. It argues that Owens led police on a chase for ten to 12 minutes at a high rate of speed through residential neighborhoods and disregarded stop signs or traffic lights

11.

during the chase. The state claims that this conduct alone—described by the officers and corroborated by video evidence—supported the element of "substantial risk of serious physical harm to persons or property."

{¶ 24} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L–10–1369, 2012–Ohio–6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 25} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and

12.

discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 26} Under R.C, 2921.331(B), "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." A violation of this statute constitutes a first-degree misdemeanor unless (C)(4) or (5) applies. In this case, Owens was convicted under (C)(5)(a)(ii). Under this section, a violation of R.C. 2921.331(B) is a third-degree felony if "[t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." "Substantial risk," as defined by R.C. 2901.01(A)(8), means "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

{¶ 27} Ohio courts hold that "it is irrelevant to the enhancement whether appellant *actually* caused or almost caused serious physical harm to persons or property." (Emphasis added.) *State v. Garrard*, 170 Ohio App.3d 487, 2007-Ohio-1244, 867 N.E.2d 887, ¶ 45 (10th Dist.). These courts emphasize that "the failure of Appellant to engage in a 'near collision' speaks to nothing more than Appellant's good luck and the careful driving on the part of other motorists on the road" and "is irrelevant" to the level of risk that the appellant's conduct created. *State v. Love*, 9th Dist. Summit No. 21654, 2004-Ohio-1422, ¶ 19. *See also State v. Hopkins*, 5th Dist. Richland No. 09-CA-66,

13.

2010-Ohio-2441, ¶ 24 (explaining that mere fact that "[a]ppellant was fortunate enough not to actually cause harm is of no consequence").

{¶ 28} In *Love*, the Ninth District held that speeding through an area of businesses near the University of Akron and residential areas, running stop signs and red lights, and driving down the middle of the road with officers in pursuit with lights and sirens created a substantial risk of harm to persons or property. It concluded that the jury did not lose its way and create a manifest miscarriage of justice when it convicted appellant of the enhancement provision of creating a substantial risk of serious physical harm to persons or property under R.C. 2921.331(C)(5)(a)(ii). *Id.*

{¶ 29} Similarly, in *Garrard*, the Tenth District found that appellant's conviction was not against the manifest weight of the evidence where the officer and detective testified that after initiating their lights and sirens, they had to use a substantial amount of acceleration during the pursuit, appellant was driving fast and probably double the speed limit, and the pursuit covered areas containing both residences and businesses. The court noted that in addition to the substantial risk of harm to any persons or property in the areas through which he fled, the court may also consider that appellant created a substantial risk of physical harm to the officers themselves.

{¶ 30} Here, Bocik testified that he observed Owens drive his vehicle—without taillights—at a high rate of speed through residential neighborhoods and he failed to stop at stop signs. He said that based on his experience, officers have been injured during

pursuit, and this pursuit placed him at risk. Sulick testified that Owens did not have taillights, was speeding, did not stop at a stop sign, and did not use turn signals. He said that although he did not see any pedestrians, this was an area of town where people may be out walking, and there was a substantial risk that someone could have been in a crosswalk or walking down the sidewalk. He also testified that driving without taillights may pose a danger to motorists. And Snowberger testified that Owens was driving through a residential area in the vicinity of Toledo Hospital where cars were parked along the street and other motorists were traveling; he was speeding and did not stop at stop signs. The dash cam videos corroborate this testimony.[1]

{¶ 31} Much of Owens's cross-examination of the officers focused on his claim that traffic was light, none of the officers observed any pedestrians, there were no adverse weather conditions, no person or property was *in fact* injured, his traffic offense was not serious, and Toledo Police Department policy requires an officer to cease pursuit when the level of danger outweighs the consequences of the suspect's escape. His position was—and is on appeal—that if police did not cease the chase, there must not have been a substantial risk of serious injury to persons or property.

{¶ 32} First, the presence of pedestrians, heavy traffic, or adverse weather conditions would have *increased* the risk—their absence did not *eliminate* the risk.

---

[1] Even if Bocik's testimony is ignored as incompetent, Sulick and Snowberger's testimony—along with their dash cam recordings—supports Owens's conviction.

Second, as already discussed, actual injury to persons or property is not required under the statute. Third, while Owens was stopped for a taillight violation, he falsely identified himself to police, therefore, not knowing his true identity, the officers could not assume that the person fleeing them was responsible for only a minor traffic violation. Finally, with respect to Owens's position that if police did not cease the chase, there must not have been a substantial risk of serious injury to persons or property, Owens points to no evidence in the record showing that the pursuit—while sufficiently dangerous to create a substantial risk of harm—was so dangerous that officers were required to abandon their pursuit. Moreover, he cites no case law or other authority showing that these two positions are so synonymous that one cannot exist without the other. And in any event, Owens argued this position to the jury and the jury was obviously not persuaded by it. We find that the jury did not clearly lose its way in rejecting Owens's position. This is not the exceptional case in which the evidence weighs heavily against the conviction.

{¶ 33} We find Owens's second assignment of error not well-taken.

### III. Conclusion

{¶ 34} We find Owens's first assignment of error not well-taken. Officer Bocik was assigned to the gang task force on the night of Owens's offense and, therefore, was not on duty "for the exclusive or main purpose of enforcing the motor vehicle or traffic laws of this state." He was, therefore, not incompetent to testify under R.C. 4549.14 and Evid.R. 601(B)(4) despite driving a limited marked vehicle that was not compliant with

R.C. 4549.13. Trial counsel was not ineffective for failing to move to exclude Bocik's testimony.

{¶ 35} We find Owens's second assignment of error not well-taken. The testimony and dash cam videos show that Owens sped through residential streets and disregarded traffic signs and signals in an effort to elude police. His conduct caused a substantial risk of serious harm to persons and property, and his conviction under R.C. 2921.331(C)(5)(a)(ii) was not against the manifest weight of the evidence.

{¶ 36} We affirm the August 3, 2021 judgment of the Lucas County Court of Common Pleas. Owens is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                     _____
                                                            JUDGE
Christine E. Mayle, J.

Gene A. Zmuda, J.                        _____
CONCUR.                                                    JUDGE

                                        _____
                                                            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.