[Cite as *State v. Costilla*, 2024-Ohio-3221.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo
        Appellee

v.

 Antonio Milo Costilla
        Appellant

Court of Appeals No.  L-23-1122

Trial Court No.  CRB-23-2973

**<u>DECISION AND JUDGMENT</u>**

Decided:  August 23, 2024

\* \* \* \* \*

Rebecca Facey, City of Toledo Prosecuting Attorney, and
Jimmie Jones, Assistant Prosecuting Attorney, for appellee.

Tyler Naud Jechura, for appellant.

\* \* \* \* \*

**ZMUDA, J.**

## I.  Introduction

{¶ 1} This matter is before the court on appeal of the judgment of the Toledo Municipal Court, sentencing appellant to 180 days in jail, with 150 days suspended, and placing appellant on probation for one year, following a trial to the court and guilty verdict on one count of domestic violence in violation of R.C. 2919.25(A) and one count of assault in violation of R.C. 2903.13, each a misdemeanor of the first degree. Finding no error, we affirm.

## II. Facts and Procedural Background

{¶ 2} On March 29, 2023, Toledo Police received two 911 calls regarding a disturbance at a home on Willard Street. Each call was brief, with the second call received around the time the first call disconnected.

{¶ 3} The first caller gave her name and address and requested help removing someone from her home. The caller then exclaimed, "He's exposing his privates and everything." When asked who the caller is referencing, she identifies him as her "kid's dad." The caller then says, "I just want him to leave" and states, "He's trying to push me out of my own house" and "He's dumping beer and he's all drunk." She adds, "He's an alcoholic" and "He's wrecking all my stuff." As the caller starts to say, "My daughter is freaking the fuck-," she stops talking to the 911 operator and another female voice is heard screaming, "He's going to fucking kill you" as the operator asks, "what's his name, what's his name," before the call disconnects.

{¶ 4} A second 911 call is received, and immediately the caller is heard screaming, "Stop. Mom, he's going to fucking kill you." The caller then speaks to the 911 operator and asks for police to come to the address, providing the street and address. The 911 operator informs the caller that 911 received a call already and police are en route to that address. The caller never provides her name to the 911 operator, but continues to scream, "Stop, please send somebody, hurry, please, please, please." From this point, the caller stops speaking to the 911 operator, but can be heard yelling and screaming at a distance from the phone. The recording also includes a man's voice, saying, "Don't touch me" and

2.

"Why are you so loud?" The recording then includes three voices arguing. Finally, the caller says, "Please mom, please get out." As the 911 operator asks if there are weapons or if anyone needs medical attention, the call disconnects.

{¶ 5} Police arrived around 11:40 a.m. to the address, and proceeded toward the home, the upper unit of a duplex. Police first encountered the victim's daughter on the front porch, and the daughter told officers that appellant was in the home, breaking everything, and he had stabbed her mother in the face. As police climbed the stairs to the upstairs unit, they encountered the victim at the door to the residence, trying to get inside. The victim identified herself, and she had visible injuries and blood on her face and head. Both the victim and her daughter gave appellant's name to the officers, and the victim told officers that appellant "was just beating the fuck out of me," and that he did not live there.

{¶ 6} Officers asked appellant to open the door, but he refused and remained barricaded in the home. Police forced their way into the residence and took appellant into custody in the living room, just inside the front door. The home was in disarray, with belongings broken and strewn all over the floor. Appellant was combative and appeared inebriated. As police instructed him to stop resisting, appellant claimed he was not resisting, and stated, "No, that's my lady, bitch, she's tripping, bro." Police cleared the home as officers placed appellant in the back of a cruiser for transport downtown.

3.

{¶ 7} On March 29, 2023, appellant was charged with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree, and one count of assault in violation of R.C. 2903.13, a misdemeanor of the first degree.

{¶ 8} On May 3, 2023, the matter proceeded to a bench trial.

{¶ 9} At trial, the city had only one witness, Officer Kevin Gracely. After establishing Officer Gracely's background, the city immediately sought to introduce the prosecution's composite Exhibit A, identified as a 911 call. The defense objected "until there's more foundation laid." The city identified the exhibit as a 911 call, with a certificate of authenticity, a "self-authenticated document," and indicated the call was part of the discovery exchanged with the defense. The trial court permitted the city to play the 911 audio. After playing audio, the trial court admitted composite Exhibit A without objection.

{¶ 10} Officer Gracely then testified that he was dispatched to the Willard Street residence on March 29, 2023, in the morning. He was wearing a body camera and testified that he reviewed the video recorded on that date. The city then played Officer Gracely's body camera footage identified as Exhibit B, without objection, stopping at intervals to ask Gracely questions.

{¶ 11} Referring to the video, Gracely identified the young woman he first encountered as the victim's daughter. Police were responding to a possible domestic violence situation, and Gracely asked the daughter the name of the man in the residence. She told him, "Antonio." He then encountered the victim as she came down the steps, and

4.

noted a cut under her left eye that was bleeding and swollen. After he helped take appellant into custody in the home, other officers secured the home. Nobody else was present besides appellant, the victim, and the victim's daughter.

{¶ 12} The city then presented Exhibit C, a group of photographs of the victim's head and face, showing injury and blood, and pictures of the home, showing property damage. Officer Gracely testified that the victim's injuries were recent, based on the redness and swelling and active bleeding. The trial court admitted the photographs comprising Exhibit C without objection. The city then introduced Exhibits D and E, birth certificates for two children sharing appellant's surname, born to the victim and appellant, with only one of the birth certificates listing appellant as father. The trial court admitted Exhibits D and E without objection.

{¶ 13} On cross examination, Officer Gracely admitted that the victim's daughter told him that she did not witness anything but arrived after the altercation and destruction in the home. Gracely also testified that he did not take the photographs that were admitted, depicting the injury and damage, and no weapon was taken from the scene.

{¶ 14} At the close of testimony, defense counsel moved for acquittal, for the first time challenging "some statements from a video from someone who's not subject to cross examination in this case." Counsel argued that appellant's name was not mentioned on the 911 call, sufficient to connect the injuries to appellant. In response, the prosecution argued that there was the 911 call, body cam video, documents establishing a relationship between victim and appellant, and the visible injuries sustained by the victim. The city

5.

argued that, although the evidence is circumstantial, it is probative and "one can deduce that this is exactly what happened."

{¶ 15} The trial court found the prosecution met its burden of producing evidence to support the elements for the charged offenses and denied the motion for acquittal.

{¶ 16} The defense rested without calling any witnesses and renewed the motion for acquittal. After the trial court re-watched the body cam video and played the 911 audio again, the trial court denied the motion and the parties proceeded to closing argument.

{¶ 17} The city argued that the 911 audio demonstrated the victim and her daughter were in fear and appellant's presence was not welcome. The city also argued that the body cam video showed the victim with a "fresh cut below her eye that was bleeding" and the testimony established that nobody else besides the victim, her daughter, and appellant were present. While no direct evidence was introduced to demonstrate that appellant assaulted the mother of his children in the commission of domestic violence, the city argued that the circumstantial evidence overwhelmingly demonstrated the elements of the offenses.

{¶ 18} In response, appellant's trial counsel argued that there was no evidence to connect appellant to the offenses. The victim did not identify appellant by name in the 911 call, and because the victim did not testify, appellant was not identified as the male voice on the 911 audio. The victim's daughter admitted to arriving after the altercation,

6.

and without the victim's testimony, counsel argued the city failed to meet its burden of proof.

{¶ 19} The city, in reply, argued the victim's statements on the 911 call occurred during a commotion in the home and therefore constituted excited utterances, and the victim identified her assailant as "her kids' dad." With evidence demonstrating appellant is father of two of the victim's children, the city argued the 911 audio identified appellant, appellant was present in the victim's home when police arrived, and the victim had visible, fresh injuries.

{¶ 20} In entering judgment, the trial court noted the contemporaneous statements on the 911 audio, indicating "He's my kids' dad" and the daughter's voice saying, "he's going to fucking kill you." The trial court noted the sound of a commotion, "a disturbing one at that." The trial court also considered the statements made when police first arrived to be excited utterance, considering the ongoing situation with appellant barricaded in the home. The trial court noted statements made on the body camera video, including, "'he stabbed my mom in the face," "He's beating – he beat the fuck out of me," "He punched me," and the identification of appellant by name. The trial court further noted that, after entering the home by kicking the door in, only appellant was present, and appellant referred to the victim as "my lady." After considering the totality of the circumstances, including the officer's testimony, the body cam video, the 911 audio, the photographs, and birth certificates, the trial court found appellant guilty of both charges.

7.

{¶ 21} The trial court referred the matter for a presentence investigation report and scheduled the matter for sentencing. At sentencing, the trial court imposed a jail term of 180 days as to the domestic violence charge, with 150 days suspended, and placed appellant on active probation for one year, and imposed only a "no fine" sentence as to the assault charge. Appellant filed a timely appeal from the judgment.

## III. Assignments of Error

{¶ 22} In challenging his conviction, appellant asserts the following as error:

1. The conviction of the defendant should be reversed as the city failed to present sufficient evidence and the conviction is against the manifest weight of the evidence that was introduced.

2. The defendant's 6th Amendment rights were violated during trial as the city used testimonial evidence of witnesses not present at trial, thereby depriving him of his right to confront those witnesses and cross-examine them.

## IV. Analysis

{¶ 23} Because the argument regarding the confrontation clause issue is potentially dispositive, we address the assignments of error in reverse.

**A. Statements made by the victim and her daughter to the 911 operator and to Officer Gracely were not testimonial, and therefore admission of those recorded statements did not implicate the Confrontation Clause.**

{¶ 24} In his second assignment of error, appellant argues his right to confront witnesses under the Sixth Amendment to the United States Constitution was violated by admission of hearsay contained within the 911 calls and the body cam video. The

8.

Confrontation Clause bars admission of testimonial hearsay unless the declarant appears as a witness at trial or the accused had a prior opportunity for cross-examination. *Crawford v. Washington,* 541 U.S. 36 (2004). We review the admission of hearsay under an abuse of discretion standard, but alleged errors involving the Confrontation Clause are reviewed de novo. *State v. McKelton*, 2016-Ohio-5735, ¶ 97.

{¶ 25} Appellant does not specifically address the hearsay issue and characterizes all recorded statements as testimonial, without any supporting argument. Appellant's reference to the record, moreover, misstates the facts, claiming police found appellant "in a closet" or that appellant and the victim were married, or that "there was no information on how the injuries were caused, when they happened, or who caused them." Finally, appellant argues that "[t]he only information gathered by Toledo Police came from a person who was not in the home [at] the time of the disturbance." Appellant's argument is contrary to the record of the case. Appellant and the victim were not married, appellant was just inside the front door to the home, and the record contains evidence of the source of the victim's injury, from the daughter, the victim, and based on the responding officer's observation upon arriving on scene.

{¶ 26} Appellant, also, did not object to admission of the 911 audio or the body cam video during trial, and only raised the issue of his right to confront witnesses within his closing argument. In asserting a Sixth Amendment violation, appellant does not identify specific statements that were testimonial, raising only general objections to "both 911 calls and the TPD bodycam" video, admitted as evidence without objection.

9.

Appellant generally argues, "This evidence was clearly testimonial in nature and [appellant] did not have an opportunity to cross examine them."

{¶ 27} The city's Composite Exhibit A was admitted as "911 calls," but the actual exhibit in the record on appeal contains audio files for two 911 calls, an incident detail report, a certificate of authenticity for the 911 calls, and four body cam video files. However, the trial transcript clearly limits the admission of evidence in Composite Exhibit A to the two 911 audio recordings. Exhibit B contains Officer Gracely's body cam video, which is a duplicate of one of the body cam video files included in Composite Exhibit A. Again, the trial transcript clearly demonstrates that only Officer Gracely's body cam video was played at trial, in conjunction with Gracely's testimony. Therefore, based on the record of trial and appellant's challenge to all statements in the 911 calls and a singular "bodycam," we must limit our review to the 911 calls from the Composite Exhibit A and Officer Gracely's body cam video from Exhibit B.

{¶ 28} Without identifying any specific statements within these two exhibits, appellant appears to object to all statements recorded within the 911 calls and Officer Gracely's body cam video. We previously considered both 911 calls and body cam video relative to confrontation issues, applying the "primary-purpose test" set forth in *Davis v. Washington,* 547 U.S. 813 (2006) and *State v. Jones,* 2012-Ohio-5677. Where the statements were made during the ongoing emergency and prior to securing the assailant, as in this case, we have determined the statements were nontestimonial. *See, e.g., State v. Schnabel,* 2019-Ohio-3024 (6th Dist.); *State v. Stevenson,* 2023-Ohio-4853 (6th Dist.).

10.

{¶ 29} The "primary-purpose test" is used to distinguish between police questioning concerning an ongoing emergency and questioning that relates to past criminal conduct, to differentiate nontestimonial hearsay from testimonial hearsay. "Because 'only testimonial hearsay implicates the Confrontation Clause,' the admission of nontestimonial statements does not violate the Confrontation Clause." *State v. Stevenson,* 2023-Ohio-4853, ¶ 60 (6th Dist.), quoting *State v. McKelton*, 2016-Ohio-5735, ¶ 185.

{¶ 30} In considering the primary purpose of the statements, "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Jones* at ¶ 145, quoting *Davis* at 822.

{¶ 31} In *State v. Williams,* 2013-Ohio-726 (6th Dist.), we determined that a neighbor's 911 call, and a statement that a man was "beating this lady up real good," and that there were no weapons, "He's just beating her," were nontestimonial because, "[v]iewed objectively, the primary purpose of the statements by the neighbor in the 911 call was to seek police assistance to aid [the victim] in an ongoing emergency involving domestic violence." *Williams* at ¶ 9-14. Similarly, in *Toledo v. Jenkins,* 2015-Ohio-1270 (6th Dist.), we determined the victim's statements in a 911 call, identifying her attacker

11.

immediately after the assault, were a call for help during an ongoing emergency. *Jenkins* at ¶ 16.

{¶ 32} In *State v. Santellana,* 2020-Ohio-5041, we considered whether admission of a 911 call violated the Confrontation Clause, applying the primary-purpose test. In that case, the trial court admitted the 911 call placed by the victim, stating he had been robbed at gunpoint by two men who kicked in his door, describing the robbers as Hispanic and black men wearing masks, brandishing guns. The victim reported the robbers drove away in a black car, and indicated the direction they fled the scene. *Santellana* at ¶ 3. A second 911 call was placed by a bystander, reporting they saw a black vehicle, pursued by police, toss a gun from the car. *Id.* at ¶ 6. Based on the ongoing emergency and the purpose of the statements to assist police in responding to the emergency, we determined the 911 calls were nontestimonial, and therefore did not violate the Confrontation Clause. *Id* at ¶ 23.

{¶ 33} In *State v. Schnabel,* we considered whether a victim's statements to a 911 operator were testimonial. In *Schnabel,* police were called to the scene of a domestic disturbance at a hotel. The victim's statements to the 911 operator were made while the assailant, the victim's husband, was still in their hotel room. The victim was recorded yelling at her husband to get away, describing what was done to her and the fact that the children witnessed the assault. *Schnabel* at ¶ 16. We determined the 911 recording did not contain testimonial hearsay, "as it was made in response to an ongoing emergency." *Id.* at ¶ 17.

12.

{¶ 34} Moreover, we further found the statements made to the responding officers were nontestimonial. When police arrived at the hotel room, the victim was still on the phone with 911, and although the husband was outside the door to the room, he seemed to be highly intoxicated and the victim and the children were "very upset," "crying," "shaking," "highly agitated," and "yelling." *Id.* at ¶ 21-22. The victim told officers that her husband grabbed her by her hair and threw her to the ground, complaining of injury to her neck. *Id.* at ¶ 22. We determined the statement by the victim "was to aid in the emergency and was not testimonial in nature." *Id.* at ¶ 23.

{¶ 35} Here, the 911 calls were made in quick succession, and based on the content of the 911 recordings, occurred during the emergency. Furthermore, the only question that received a response identified the assailant as the victim's "kid's dad." A 911 call to report an ongoing emergency, with statements made contemporaneously with the emergency to request police assistance, are not testimonial statements for Sixth Amendment purposes. *Schnabel,* 2019-Ohio-3024 at ¶ 14 (6th Dist.), citing *Davis,* 547 U.S. at 826-827.

{¶ 36} Likewise, the statements made to the responding officers, prior to securing appellant and the scene, were not testimonial. The victim and her daughter identified appellant, barricaded in their home, with police questioning limited to appellant's location and whether appellant had a gun. The victim's injuries and demeanor, moreover, are clear on the video.

13.

**{¶ 37}** In *State v. Stevenson,* we addressed the admissibility of body cam video, noting only testimonial hearsay implicated rights to confrontation. *Stevenson* at ¶ 60, citing *State v. McKelton,* 2016-Ohio-5735, ¶ 185. We applied the primary-purpose test to the statements made to police, recorded on body cam video, and considered whether the statement was made to assist police in addressing an ongoing emergency. *Stevenson* at ¶ 61, citing *State v. Ford,* 2021-Ohio-3058 (6th Dist.), ¶ 22. We focused on whether the statement was made to assist police in determining what is happening in the present, rather than "establish or prove past events potentially relevant to later prosecution." *Stevenson* at ¶ 61-62, citing *Ford* at ¶ 22, quoting *Davis v. Washington,* 547 U.S. 813, 822 (2006).

**{¶ 38}** In making this determination, we considered the context, such as whether a weapon is involved, and whether a risk continued to exist for the victims, the public, or the police. *Stevenson* at ¶ 62-63. We also considered the manner of the questioning, noting a more formal interrogation is likely to result in testimonial statements. *Id.* at ¶ 64. In applying the primary-purpose test, we determined the recorded statements on body cam video during an ongoing emergency were nontestimonial, as they were made prior to apprehending the assailant. (Citations omitted) *Stevenson* at ¶ 69-70. In contrast, we have previously determined that statements made after police have secured the scene and the emergency has passed are testimonial. *Stevenson* at ¶ 68, citing *Toledo v. Sailes,* 2008-Ohio-6400, ¶ 17 (6th Dist.); *Toledo v. Green,* 2015-Ohio-1864, ¶ 21-24 (6th Dist.).

14.

{¶ 39} Similarly, in *State v. Sproles,* 2023-Ohio-3403 (6th Dist.), we considered admission of the victim's statements, recorded on the officers' body camera, and concluded the statements were nontestimonial. *Sproles* at ¶ 30. At the time of the statements, the victim was visibly distraught and packing to flee the home before the assailant returned. *Id.* The victim indicated that the assailant was armed and had just threatened to kill her. *Id.* Based on the circumstances, we found the statements "had the primary purpose to meet an ongoing emergency" and, therefore, were nontestimonial. *Id.*

{¶ 40} In this case, police arrived while appellant was barricaded in the victim's home, and the victim and her daughter were both visibly upset. The police asked the women for the name of the assailant and whether there were weapons involved. Without prompting, the victim's daughter informed police that appellant had "stabbed" her mother in the face, and the victim's injuries were actively bleeding when police first encountered her. The victim, furthermore, was crying and upset, and told police that appellant "was just beating the fuck out of me" and indicated the assailant was barricaded inside the home. After police gained entry, they took appellant into custody and verified there were no other people inside the home.

{¶ 41} Whether an emergency exists at the time statements are provided is "a highly context-dependent inquiry." *Stevenson* at ¶ 62, quoting *Michigan v. Bryant,* 562 U.S. 344, 353 (2011). Here, based on the record, at the time of the statements recorded by the body cam video, the police were clearly trying to assess what was happening, rather than what had already happened, prior to taking appellant into custody. *Id.,* citing *Davis,*

15.

547 U.S. at 830. Furthermore, the victim and her daughter made statements regarding the origin of the victim's injuries spontaneously and in a state of distress, and not in response to interrogation. Finally, police asked for appellant's name and then used that information to communicate with appellant through the door, asking him to open the door. Consistent with our precedent, such statements were nontestimonial. *See, e.g, Stevenson* at ¶ 69.

{¶ 42} Accordingly, considering the record in this case, we find the recorded statements of the victim and the victim's daughter were not testimonial, and therefore did not implicate the Confrontation Clause. Appellant's second assignment of error, therefore, is not well-taken.

### B. The convictions on each charge were supported by the sufficiency and weight of the evidence.

{¶ 43} In his first assignment of error, appellant argues that his convictions were against the sufficiency and weight of the evidence because the city presented only one witness, Officer Kevin Gracely, who did not interview any witnesses, conduct his own investigation, or personally witness any of the events inside the home. Appellant argues that, without physical evidence from the scene or the testimony of an eyewitness, the city failed to sustain its burden of sufficiency by producing evidence as to each element of the offenses or its burden by the weight of the evidence by producing credible evidence to support the verdict.

16.

**{¶ 44}** Appellant was convicted of domestic violence in violation of R.C. 2919.25(A) and assault in violation of R.C. 2903.13. R.C. 2919.25(A) provides, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2903.13 provides, "No person shall knowingly cause or attempt to cause physical harm to another[.]" Appellant argues that, without the testimony of the victim or testimony of the officer who took photos of the victim's injury or property damage, the city failed to introduce sufficient and credible evidence to support conviction.

**{¶ 45}** Appellant challenges both the sufficiency and weight of the evidence. "Sufficiency of evidence is a term of art for applying the legal standard to determine whether the evidence is legally sufficient to support the verdict as a matter of law." *Toledo v. Manning,* 2019-Ohio-3405, ¶ 13 (6th Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). The test for sufficiency is one of adequacy, or "whether the evidence, if believed, can sustain the verdict as a matter of law." *Manning* at ¶ 12, citing *State v. Myers,* 2018-Ohio-1903, ¶ 132. The sufficiency standard applies to the prosecution's burden of production at trial. *State v. Messenger,* 2022-Ohio-4562, ¶ 26.

**{¶ 46}** The test of manifest weight of the evidence, on the other hand, applies to the prosecution's burden of persuasion. *Messenger* at ¶ 26. "A challenge to a conviction based on the manifest weight of the evidence questions whether the trial court could find a greater amount of credible evidence was admitted at trial to sustain that decision than not." *Manning* at ¶ 41, citing *State v. Montgomery,* 2016-Ohio-5487, ¶ 75, citing *Thompkins* at 387. In reviewing a verdict against the manifest weight of the evidence, we

17.

give deference to the trial court's credibility determinations, and the testimony of a single witness, if believed, will support a conviction. *Manning* at ¶ 41-42, citing *Myers,* 2018-Ohio-1903, ¶ 140-141.

{¶ 47} Here, the city presented one witness and admitted several exhibits, including the 911 recordings and Officer Gracely's body cam video. This evidence demonstrated that appellant was the only male present at the scene, the victim and her daughter identified appellant as the assailant, both on the 911 calls and to Officer Gracely as he responded to an active scene. Furthermore, the recording showed that the victim had visible, still-bleeding injuries to her face and head. Finally, while appellant did not reside with the victim, the evidence showed that appellant and the victim had children together.

{¶ 48} Thus, the city presented evidence as to each element of the offenses of domestic violence and assault, as charged, to sustain the city's burden of production. In reviewing the entire record, moreover, we do not find that the trial court clearly lost its way in weighing the evidence and finding appellant guilty as to each offense. Considering the record, the greater amount of credible evidence supported the trial court's verdict as to domestic violence and assault. Based on this record, we find appellant's first assignment of error not well-taken.

## V.  Conclusion

**{¶ 49}** Having found substantial justice has been done, we affirm the judgment of the Toledo Municipal Court. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.       _____
                                                                 JUDGE

Gene A. Zmuda, J.

                                                   _____
Charles E. Sulek, P.J.                                    JUDGE
CONCUR.

                                                   _____
                                                                 JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.