**[Cite as *State v. Freeman*, 2026-Ohio-1795.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No. WD-25-041

     Appellee                               Trial Court No. 2023CR1034

v.

Corey James Freeman                      **DECISION AND JUDGMENT**

     Appellant                               Decided: May 15, 2026

* * * * *

Paul A. Dobson, Esq., Wood County Prosecuting Attorney, for appellee.

Jeffrey P. Nunnari, for appellant.

* * * * *

**ZMUDA, J.**

## I.     Introduction

{¶ 1} Appellant, Corey James Freeman, appeals the March 12, 2025 judgment of the Wood County Court of Common Pleas convicting him of one count of failure to comply with an order or signal of the police officer, one count of having weapons while

under disability, one count of improperly handling firearms in a motor vehicle, and one count of possession of cocaine, and sentencing him to a 60-month prison term. For the reasons that follow, the trial court's judgment is affirmed.

## II.     Facts and Procedural History

{¶ 2} On March 16, 2023, appellant was indicted by a grand jury in the Wood County Court of Common Pleas on one count of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), a third-degree felony (count 1); one count of having weapons while under disability in violation of R.C. 2923.13(A)(2) and (B), a third-degree felony (count 2); improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B) and (I), a fourth-degree felony (count 3); one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2) and (C)(4)(a), a fifth-degree felony (count 4); and one count of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(a), a fifth-degree felony (count 5).

{¶ 3} The charges stemmed from an incident on the morning of June 26, 2022 in Lake Township, Ohio. An officer with the Lake Township Police Department initiated a traffic stop of a vehicle driven by appellant, who was suspected to have been involved in a domestic violence incident at a nearby motel. Though appellant initially pulled over and stopped his vehicle, he drove away while the officer was getting out of her vehicle to approach appellant. After nearly colliding with a semitruck and another police vehicle pursuing appellant, appellant lost control of his vehicle, crashed into a ditch, and attempted to escape on foot. Muddy conditions prevented appellant from getting far, and

2.

appellant gave himself up to the police. A search of the vehicle appellant was driving revealed a firearm in the center console as well as a bag containing cocaine.

{¶ 4} Appellant pled not guilty to the charges in the indictment, and the case proceeded to a jury trial. At trial, the State presented the testimony of two witnesses, Officer Rachel Caputo and Detective Jason Algarin, who were both working for the Lake Township Police Department at the time of the incident. Caputo testified regarding her attempt to initiate a traffic stop of appellant and the ensuing chase. Algarin's testimony concerned the items located in the search of the vehicle appellant was driving and is not relevant to this appeal.

{¶ 5} Caputo testified that on the morning of June 26, 2022, she responded to a call for assistance from the manager of the Super 8 Motel on Latcha Road in Lake Township. Caputo was told that a possible domestic violence incident had occurred there, and the alleged victim, H.M., was in the motel's office with the manager, who had locked out the alleged perpetrator. The manager reported that the perpetrator was leaving the premises and was driving a gray or silver SUV.

{¶ 6} Caputo was driving near Latcha Road at the time she was notified of the call, and once she turned onto Latcha Road, she saw a vehicle matching that description with a male driver. Caputo initiated a traffic stop by turning on her overhead lights, and the SUV pulled over to the side of the road and stopped. Caputo observed that appellant, whom she identified as the driver of the SUV, was acting differently than how drivers typically act during traffic stops in her experience. Instead of looking for his license, registration, and insurance as most drivers do, appellant was maintaining eye contact with

3.

her through the SUV's rearview mirror. As soon as Caputo put one foot on the pavement outside of the police vehicle, appellant drove away, accelerating quickly. Caputo got back into her vehicle and began pursuing appellant with her lights and sirens on.

{¶ 7} Appellant drove southbound on Baker Road toward Bahnsen Road, which led to the on-ramp for I-280. Baker Road was a two-lane road with opposing traffic driving in each lane, and stop signs were located on Bahnsen Road at the intersection with Baker Road. Caputo noted that it was a wet and muddy day, and she characterized the intersection as a high-traffic area, explaining that in addition to being a primary access point to the interstate, several truck stops and businesses catering to semitruck traffic were in the immediate vicinity. Caputo testified that she did not follow appellant too closely because of the extremely heavy semitruck traffic. A semitruck was driving in front of appellant in the right lane, and the truck was slowing down to turn right onto Bahnsen Road as they approached the intersection. Appellant attempted to pass the semitruck by driving into the left lane, the lane for traffic traveling in the opposite direction. At the same time, a second police officer with Lake Township Police, Officer Peacock, was driving westbound on Bahnsen Road into the intersection with Baker Road with his lights and sirens on in pursuit of appellant. Next to Officer Peacock on Bahnsen Road was a semitruck attempting to turn northbound onto Baker Road. As appellant attempted to pass the semitruck turning onto Bahnsen Road, appellant drove within six to ten feet of Peacock's vehicle and had to swerve to miss both Peacock's vehicle and the semitruck turning northbound onto Baker Road, narrowly missing a head-on collision.

4.

{¶ 8} Appellant then lost control of his vehicle and went into a ditch. The ditch was muddy, and appellant's vehicle became stuck. Appellant exited the vehicle and attempted to flee on foot, but the mud made running away too difficult, so appellant turned around and walked to where Caputo and Peacock were pulled over on the side of the road. A tow truck was required to get the vehicle out of the ditch.

{¶ 9} On cross-examination, Caputo testified that although appellant had sped off quickly after initially pulling over for the traffic stop, she estimated that he was driving within the 55 mph speed limit as he drove down Baker Road. She also clarified that there was not a stop sign for traffic on Baker Road at the intersection with Bahnsen Road and therefore he would not be running a stop sign while driving through that intersection. She testified that the only traffic law he violated was using the left lane in his attempt to pass the semitruck on Baker Road when there was oncoming traffic—the semitruck and second police vehicle turning from Bahnsen Road onto Baker Road—in that lane.

{¶ 10} At the close of the State's case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29, arguing that the State had failed to meet its burden with respect to failure to comply with the signal of an officer. Appellant contended that the State had not set forth evidence that appellant's actions caused a serious risk of harm to persons or property because appellant was not speeding or violating any traffic laws in his attempt to elude Caputo other than swerving to avoid being hit by a second police vehicle. He characterized Caputo's testimony about what led to appellant ending up in the ditch as "confusing." In response, the State pointed out that while appellant was driving away from a police officer in heavy traffic and wet conditions, he nearly missed hitting a

5.

second police officer and crashed into a ditch, disabling the vehicle, and therefore there was evidence that property—the vehicle appellant was driving—was harmed. The trial court denied the motion, noting that although appellant may not have exceeded the speed limit, he accelerated quickly away from a police officer attempting to initiate a traffic stop and later drove into oncoming traffic.

{¶ 11} Following deliberations, the jury found appellant guilty on all four counts. The trial court merged counts 2 and 3 for sentencing, and the court sentenced appellant to a 24-month prison term for count 1 to be served consecutively with his other sentences. As to the remaining counts, the court imposed a 36-month prison term for count 2 and a 12-month prison term for count 4, to be served concurrently.

### III. Assignment of Error

{¶ 12} On appeal, appellant asserts the following assignment of error for our review:

> Appellant's conviction for a felony failure to comply offense is not based on sufficient evidence and is against the manifest weight of the evidence.

### IV. Law and Analysis

{¶ 13} In his assignment of error, appellant contends his conviction for felony failure to comply is not supported by sufficient evidence and is against the manifest weight of the evidence, combining two distinct issues into a single assignment of error. In considering the sufficiency of the evidence, an appellate court considers whether the State met its burden of production at trial, whereas the test for whether a conviction is against the manifest weight of the evidence applies to the prosecution's burden of

6.

persuasion. *State v. Costilla*, 2024-Ohio-3221, ¶ 45-46 (6th Dist.), citing *State v. Messenger*, 2022-Ohio-4562, ¶ 26.

{¶ 14} "Sufficiency of evidence is a term of art for applying the legal standard to determine whether the evidence is legally sufficient to support the verdict as a matter of law." *Toledo v. Manning*, 2019-Ohio-3405, ¶ 13 (6th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Therefore, in an appellate court's review for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In making that determination, we do not weigh the evidence or assess the credibility of the witnesses." *State v. Gillen*, 2025-Ohio-1095, ¶ 48 (6th Dist.), citing *State v. Were*, 2008-Ohio-2762, ¶ 132.

{¶ 15} When reviewing a manifest weight claim, however, we do not view the evidence in a light most favorable to the prosecution, and instead, we sit as a "thirteenth juror," reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "The test of manifest weight of the evidence … applies to the prosecution's burden of persuasion." *Costilla* at ¶ 46, citing *Messenger* at ¶ 26. Therefore, in conducting a manifest weight review, we must determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

7.

*Thomkins* at 387. We reverse a conviction on manifest weight grounds for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

{¶ 16} Although appellant asserts two distinct challenges to his conviction for felony failure to comply, he makes the same argument in support of both. He contends that there was no evidence to establish that the vehicle appellant was driving was actually damaged, nor was there any evidence that any person was injured. He points out that he did not exceed the speed limit and he alleges he did not commit any traffic offenses while attempting to elude Officer Caputo, and therefore he maintains that although his conduct may have created a "significant" risk of harm to persons or property, it did not create a "substantial" risk.

{¶ 17} R.C. 2921.331(B) provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." R.C. 2921.331(C)(5)(a)(ii) elevates the offense to a third-degree felony if "[t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." R.C. 2901.01 defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

{¶ 18} Notably, the absence of actual harm is not dispositive of whether appellant's actions created a substantial risk of harm. *State v. Owens*, 2022-Ohio-2908, ¶ 27 (6th Dist.), quoting *State v. Garrard*, 2007-Ohio-1244, ¶ 45 (10th Dist.); *State v. Haeft*, 2022-Ohio-4304, ¶ 27 (6th Dist.). Indeed, "'the failure of [a]ppellant to engage in

8.

a 'near collision' speaks to nothing more than [a]ppellant's good luck and the careful driving on the part of other motorists on the road' and therefore 'is irrelevant' to the level of risk that the appellant's conduct created." *Owens* at ¶ 27, quoting *State v. Love*, 2004-Ohio-1422, ¶ 19 (9th Dist.). Moreover, the risk is not limited to that posed to the general public, and it may include the risk to the police officers, appellant's own vehicle, and the real property where appellant's vehicle drove. *Id*. at ¶ 29; *see also State v. Hopkins*, 2010-Ohio-2441, ¶ 21 (5th Dist.) (affirming conviction for felony failure to comply where appellant caused a substantial risk of harm to "the trooper's cruiser, his own vehicle, and the real property where he wrecked his vehicle"). Finally, when considering the level of risk imposed by an appellant's attempt to elude police in a vehicle, we have previously noted that the "the presence of … heavy traffic[] or adverse weather conditions …increased the risk." *Owens* at ¶ 32; *see also Haeft* at ¶ 29.

{¶ 19} Here, the State presented evidence that appellant accelerated quickly away from Officer Caputo in wet conditions, attempted to pass a semitruck in a busy intersection, and in doing so, appellant came within six to ten feet of a head-on collision with a second police vehicle that also had its lights and sirens engaged. Appellant ultimately lost control of his vehicle and crashed into a ditch, and a tow truck was necessary to remove the vehicle from the ditch. Coming within six to ten feet of a head-on collision while traveling at 55 mph in wet conditions created a substantial risk of harm to appellant, Officer Peacock, the drivers of the nearby semitrucks, and all of their vehicles. Further, even if the record does not reflect whether the vehicle appellant was driving had any lasting damage after it was towed out of the ditch, the absence of

9.

evidence of permanent damage is irrelevant to whether appellant's conduct created a substantial risk of harm. By crashing the vehicle into a ditch, appellant created a substantial risk of harm to himself and the vehicle. Moreover, the State presented evidence that the vehicle was at least temporarily disabled and had to be towed out of the ditch. Accordingly, viewing the evidence in a light most favorable to the State, we find that the record contains evidence sufficient to support a finding of guilt.

{¶ 20} Next, appellant's conviction was not against the manifest weight of the evidence. In support of this component of his assignment of error, appellant makes no arguments challenging the credibility of the evidence presented by the State, instead relying on the same argument for both sufficiency and manifest weight. As already discussed, Officer Caputo testified credibly that despite having her sirens and overhead lights on, appellant attempted to elude her order to pull over and instead accelerated quickly away from her in wet conditions in a high traffic area, nearly causing a head-on collision and ultimately losing control of his vehicle and crashing into a ditch. As already discussed, this evidence was sufficient to support a finding that he caused a substantial risk of harm to himself, his own vehicle, the drivers of the nearby vehicles, and the drivers of those vehicles. Appellant points to no evidence that contradicts that testimony. Accordingly, this is not the "exceptional case in which the evidence weighs heavily against the conviction," and his conviction was not against the manifest weight of the evidence.

{¶ 21} Appellant's assignment of error is not well-taken.

10.

## V.   Conclusion

**{¶ 22}** Appellant's assignment of error is found not well-taken.  We affirm the

March 12, 2025 judgment of the Wood County Court of Common Pleas.  Appellant is

ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Gene A. Zmuda, J.
_____
JUDGE


Myron C. Duhart, J.
_____
JUDGE


Charles E. Sulek, J.
CONCUR.                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.