[Cite as *State v. Haeft*, 2022-Ohio-4304.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                   Court of Appeals No.  OT-22-011

    Appellee                                Trial Court No.  20-CR-039

v.

Cory Haeft                                      **DECISION AND JUDGMENT**

    Appellant                               Decided:  December 2, 2022

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Thomas A. Matuszak, Assistant Prosecuting Attorney, for appellee.

Brian A. Smith, for appellant.

* * * * *

**ZMUDA, J.**

## I.      Introduction

{¶ 1} Appellant, Cory Haeft, appeals from the judgment of the Ottawa County

Court of Common Pleas, sentencing him to an aggregate prison term of 36 months

following a jury trial in which he was found guilty of one count of breaking and entering

and two counts of failure to comply.  Finding no error, we affirm.

## A. Facts and Procedural Background

{¶ 2} In early 2020, the Ottawa County Sheriff's office learned of a series of vehicle break-ins and thefts of property, primarily in the western area of the county near State Route 579. As part of efforts to apprehend the culprit, Captain Aaron Leist of the Sheriff's Office, in conjunction with other patrol officers, conducted a "saturation patrol" of the area on February 9, 2020. Leist drove an unmarked cruiser, while the other officers were in marked cruisers.

{¶ 3} On February 9, 2020, around 2:00 a.m., Leist observed a west-bound vehicle on Route 579, and as it passed him, he noted "[i]t looked similar to a vehicle that was associated with some other incidents." Leist began following the vehicle. Based on the license plate, he identified the owner as Mark Haeft, appellant's father. The vehicle then turned down Reiman Road and began driving "somewhat erratic[ally]" as if trying to prevent Leist from following. Leist called the other officers to coordinate pursuit, and Leist continued following the vehicle, keeping it in sight. After the vehicle turned west on Walbridge Road and into the first driveway to turn around, Leist drove by and "was able to see inside the car and was able to positively identify [appellant], who was then was turning around to head back east on Walbridge Road."

{¶ 4} Leist drove past, and once he noted appellant driving eastbound, he turned around and followed at a distance, keeping appellant's taillights in view. When appellant pulled into a driveway on Reiman Road, just before Route 579, Leist notified the other

2.

officers that they should respond to the address. Upon approach, Leist observed appellant's empty vehicle, parked in the driveway in front of three barns. Leist saw an open man-door on the largest barn and recent tracks in the snow, leading up to that door. Leist radioed an update to the other officers, noting appellant was likely inside the barn, and moved his unmarked vehicle into position to prevent appellant from exiting north from the property toward Route 579.

{¶ 5} As Leist moved into position, he observed appellant exit the barn, get into his vehicle, and turn south from the property. Deputy Jonah Boyer was approaching, also southbound, so Leist moved out of his way to permit Boyer to pursue and stop appellant's vehicle. Leist's unmarked vehicle was just a standard sedan, and not equipped for pursuit over winter roads. The marked units driven by the deputies were specially equipped law enforcement models.

{¶ 6} Boyer began his pursuit after appellant exited the driveway on Reiman Road. The speed limit there is 55 miles per hour, and Boyer noted that appellant's vehicle was "gaining ground on [him] very quickly." Boyer increased his speed, trying to catch up, and activated his lights and siren while still a half mile to a mile behind appellant. Boyer pursued appellant's vehicle reaching speeds around 80 miles per hour, but a gap remained between Boyer's cruiser and appellant's vehicle. Boyer indicated his cruiser could reach speeds over 100 miles per hour, but the icy conditions were not ideal for speed.

3.

{¶ 7} Appellant turned west on Walbridge Road, driving in the middle of the road at high speed. The two-lane country roads were icy with some snow, and there were steep ditches on both sides. Boyer observed appellant proceed through the stop sign at Fostoria Road without stopping. Appellant then crossed into Wood County. Appellant finally stopped on State Route 51, after about a two-mile pursuit. When Boyer approached appellant's vehicle, weapon drawn, appellant exited his vehicle saying, "I give up." Boyer took appellant into custody and appellant executed a waiver after receiving his *Miranda* warning.

{¶ 8} Leist and Boyer interviewed appellant while he was in custody at the Ottawa County Jail and appellant admitted he saw the lights and heard the siren. He admitted that he did not stop for more than two miles while being pursued at over 80 miles per hour. Appellant indicated he was on the phone with his brother, and finally stopped at his brother's urging. While in custody, appellant made phone calls which were recorded by the jail. Within the phone conversations, appellant admitted he fled police and led them on a three-mile chase after being spotted entering the barn to take gas for his vehicle. Appellant also admitted he wanted to make it to the next county, out of the jurisdiction, and indicated he was driving "like a hundred miles an hour."

{¶ 9} On February 26, 2020, appellant was charged in a three-count indictment with Count 1: breaking and entering in violation of R.C. 2911.13(A) and (C), a felony of the fifth degree; Count 2: failure to comply in violation of R.C. 2921.331(B) and

4.

(C)(5)(a)(ii), a felony of the third degree; and Count 3: failure to comply in violation of R.C. 2921.331(B) and (C)(4), a felony of the fourth degree. After a one-day trial on November 17, 2021, a jury found appellant guilty of all charges.

{¶ 10} At sentencing, the trial court imposed a prison term of 12 months as to Count 1, and after determining that Counts 2 and 3 merged for purposes of sentencing, the trial court imposed a prison term of 24 months as to Count 2. After making the statutory findings, the trial court ordered the sentences to be served consecutively, for an aggregate prison term of 36 months, with that sentence to be served consecutively to the prison term appellant was serving in a separate, Wood County case.

{¶ 11} Appellant filed a timely appeal of the judgment.

## B. Assignment of Error

{¶ 12} On appeal, appellant asserts a single assignment of error:

> Appellant's convictions for Failure to Comply on Counts Two and Three of the Indictment were against the manifest weight of the evidence.

## II. Analysis

{¶ 13} In his sole assignment of error, appellant argues the manifest weight of the evidence does not support conviction on failure to comply. In reviewing a claim that the verdict is against the manifest weight of the evidence, we consider "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue

5.

rather than the other." (Citation omitted) *State v. Thompkins,* 78 Ohio St. 3d 380, 387, 678 N.E.2d 541 (1997) (emphasis sic.).

{¶ 14} We consider the evidence, not most favorably for the state, but as a "thirteenth juror" and will not reverse unless we find the jury clearly lost its way in resolving conflicts in the evidence, creating such a miscarriage of justice that reversal and a new trial is necessary. *Id.,* citing *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983) (additional citation omitted.). Reversal based on manifest weight grounds is reserved for the exceptional case where "the evidence weighs heavily against conviction." *Thompkins* at 387, *Martin* at 175.

{¶ 15} The jury found appellant guilty of failure to comply in Count 2, based on operating a vehicle "so as willfully to elude or flee a police officer after receiving a visible or audible signal" to stop, with the operation of the vehicle causing "a substantial risk of serious physical harm to persons or property." R.C. 2921.331(B) and (C)(5)(a)(ii). The jury also found appellant guilty of failure to comply in Count 3, based on the same fleeing and eluding conduct "immediately after the commission of a felony." R.C. 2921.331(B) and (C)(4). At sentencing, the trial court imposed sentence as to Count 2. Because we are limited to addressing only final judgments, we address only argument relative to the sentenced count, Count 2. *See State v. Lester,* 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, paragraph one of the syllabus (judgment of conviction, subject to appeal under R.C. 2505.02, includes verdict and sentence); (citations omitted)

6.

*State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 13 (a conviction consists of a guilty finding and the sentence imposed).

{¶ 16} On appeal, appellant argues the weight of the evidence does not support the conviction, focusing on evidence of fleeing and evidence of substantial risk or harm. Appellant argues that the evidence did not demonstrate he "willfully" kept driving once he became aware of the lights and siren, but instead, he pulled over at the first safe opportunity. He also argues that he remained in control of his vehicle on clear roads, demonstrating no risk of harm to persons or property. In support, appellant discounts the testimony of law enforcement as inconsistent and not credible while arguing his own testimony was credible. Appellant's own statements following the pursuit, however, supported the jury's verdict, with his trial testimony presenting the only truly conflicting evidence.

{¶ 17} At trial, Captain Leist and Deputy Boyer testified regarding their identification of appellant as a suspect and the subsequent high-speed pursuit. Boyer testified that appellant failed to stop for stop signs and drove down the middle of the road at speeds that made it difficult for Boyer to close the gap. The officers also testified regarding the road conditions that day, and the dangers they perceived in driving at high speeds on narrow country roads under those conditions. Most significantly, appellant's own statements were proffered as evidence based on Leist's and Boyer's interview of appellant in the hours following the pursuit, and based on recorded phone calls made by

7.

appellant while in custody at the jail.[1]  Leist, Boyer, and Captain William Marshall, who monitors the phone system at the jail, all testified regarding appellant's own statements in which he admitted fleeing at high speeds to avoid apprehension after entering the barn to steal gas.

{¶ 18} In challenging the evidence, appellant attempts to identify conflicts in the record, relative to the officer testimony.  Appellant argues the officer testimony contained discrepancies regarding the weather and road conditions and regarding the distance at which Boyer activated his lights and siren.  Appellant contends the evidence did not demonstrate that appellant knew he was being pursued to support the finding he willfully fled from the pursuit and, because the roads were clear, the evidence did not demonstrate any risk of serious physical harm to persons or property.  Appellant further argues that, because Boyer's testimony regarding when he activated his lights and siren differed from his written report by a half-mile, all of Boyer's testimony is unreliable and should not be credited.  In pointing to these claimed inconsistencies, appellant attempts to distinguish his own prior statements, which conflicted with his trial testimony, as the product of his several days of drug use leading up to the pursuit.

{¶ 19} Appellant testified at length at trial.  He testified regarding his drug problem and history of criminal cases, including his most recent Wood County case

---

[1] Based on the record, it appears the parties consented to presenting the contents of appellant's recorded statements through Marshall's testimony and written notes, summarizing the calls, in lieu of playing the recordings for the jury.

8.

which involved another police chase while he was out on bond pending trial in the present case. Appellant testified that he had been using drugs for many days, and when he noticed an unmarked car following him, he "grew paranoid" and conducted "counter-surveillance" measures until he believed the car stopped following him. He also admitted he entered the barn to find gas for his car so he could drive to Toledo to purchase more drugs. When appellant exited the barn, he noticed the same unmarked car and sped away, afraid that someone with a gun was chasing him. Appellant indicated he had previously been chased by guys with guns in Toledo, and was paranoid and alert for such a danger.

{¶ 20} As to the conditions, appellant denied the roads were bad, believing the weather was clear that day. At the same time, appellant also testified that his car was "not the best car to be driving in adverse conditions at that speed." The record, which includes testimony and body-cam video, demonstrates winter conditions at the time of the pursuit, and Boyer – who drove the same roads as appellant – testified there was snow and ice in places on those roads. He also testified that, because of the steep ditches, he had witnessed crashes on those roads that caused serious injury and damage even at slower speeds.

{¶ 21} At trial, appellant's counsel argued that, because Boyer did not break off his pursuit, the roads were safe enough to travel, negating the risk of danger necessary to support conviction for failure to comply. On appeal, appellant now appears to acknowledge dangerous roads, arguing the "hazardous conditions, particularly on a rural

9.

road in the middle of the night, would have made it difficult for [appellant] to find a safe spot to pull his vehicle to the side of the road." Therefore, appellant argues, he had a justifiable excuse for not stopping until he was at a place he could safely pull over and the state failed to prove he "willfully" fled or eluded law enforcement for purposes of a failure to comply conviction.

{¶ 22} Appellant's statements and testimony at trial contradict this position on appeal, namely that he made a measured decision to find a safe place to pull over. Immediately following his arrest, appellant provided Leist and Boyer with a statement and drew a diagram, showing where he was when he saw the lights and heard the siren. He also acknowledged to Leist and Boyer, in that interview, that he knew law enforcement was pursuing him as he fled. Later, in a recorded jail call, appellant admitted he fled from police and only stopped when his brother told him to stop. At trial, appellant attempted to discount his prior statements, testifying he was "extremely impaired" during his interview with Leist and Boyer and "under the influence of many drugs."

{¶ 23} At trial, appellant attempted to show he did not know he was fleeing police and that his high-speed flight created no danger, contradictory argument considering his admitted impairment. Appellant insisted he was in control of his vehicle at all times, evidenced by Boyer's decision to not charge him with operating his vehicle under the influence, and therefore he posed no danger. However, when asked about fleeing from

10.

Deputy Boyer, appellant claimed he did not immediately realize Boyer was pursing him as opposed to another car because of all the drugs he had done. He also testified there were no other cars on the road, but he still could not know Boyer was pursuing him and not another vehicle. Appellant testified:

> Okay. I want to explain. So I'm on Fostoria when he activated [his lights and siren]. He's two miles behind me. I'm going at a high rate of speed. Still unknowing he's in the distance behind me, not knowing that he's pursuing me. Right? I see the lights in the distance. Once he goes on that road and I realize that he's following me, that's when I pulled the car over.

According to the testimony at trial, appellant covered a distance of 1.7 miles between the point he indicated he noted lights and sirens, on Fostoria Road, and the place he finally came to a stop after crossing the county line, on State Route 51.

{¶ 24} Appellant argues that the jury lost its way in resolving conflicting testimony, but the claimed "conflict" in the testimony of Leist and Boyer concerned approximations regarding weather conditions or distance, rather than opposing accounts of the pursuit. Appellant's testimony at trial, however, did conflict with his prior statements to Leist and Boyer and in his recorded phone calls. While appellant testified at trial that he did not know his pursuer was law enforcement, the jury clearly rejected this version of events in favor of other evidence that included appellant's own, prior

11.

statements, demonstrating appellant knew Bishop was law enforcement and was in pursuit with lights and siren activated. As the trier of fact, the jury has that authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Nowak,* 6th Dist. Lucas No. 21-1215, 2022-Ohio-2980, ¶ 22, quoting *State v. Antill,* 176 Ohio St.61, 67, 197 N.E.2d 548 (1964).

{¶ 25} The jury also determined that appellant operated his vehicle in such a manner as to cause a substantial risk of serious physical harm to persons or property. Appellant argues the evidence did not support this finding, considering the fact that Boyer continued the pursuit, there were no other vehicles on the road, and neither Boyer nor appellant lost control of their vehicles. The evidence, however, included testimony regarding wintry roads and steep ditches, with Boyer indicating he had experience responding to serious wrecks in those ditches where vehicles lost control at the speed limit, let alone the speeds appellant reached in attempting to outrun pursuit.

{¶ 26} In order to convict, the jury needed to find appellant caused "a substantial risk of serious physical harm to persons or property." R.C. 2921.331(B) and (C)(5)(a)(ii). Pursuant to R.C. 2901.01(A)(8), a substantial risk is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

{¶ 27} There is no requirement under the statute that the conduct actually or almost caused serious physical harm to demonstrate a substantial risk, as the lack of an

12.

accident "'speaks to nothing more than Appellant's good luck and the careful driving on the part of other motorists on the road,'" factors that are irrelevant "to the level of risk that the appellant's conduct created." *State v. Owens,* 6th Dist. Lucas No. L-21-1148, 2022-Ohio-2908, ¶ 27, quoting *State v. Love,* 9th Dist. Summit No. 21654, 2004-Ohio-1422, ¶ 19; *see also State v. Hopkins,* 5th Dist. Richland No. 09-CA-66, 2010-Ohio-2441, ¶ 24 ("It is only the strong possibility that harm could occur that creates culpability under R.C. 2921.331(C)(3).") (additional citation omitted). Additionally, arguing "no accident or damage" is not the same as arguing no *risk* of serious physical harm to person or property. Therefore, appellant's argument relative to the fact neither he nor Boyer lost control of their vehicles is without merit.

{¶ 28} Appellant also argues that, because Boyer did not break off his pursuit, there was no evidence of a substantial risk of harm. We have previously rejected such a claim, lacking evidence that continuing pursuit "was so dangerous that officers were required to abandon their pursuit." *Owens* at ¶ 32. Here, appellant points to no evidence indicating such heightened danger, but instead, maintains there was no danger because the roads were clear and free of winter hazards. The road conditions, however, was an unsettled issue for the jury's determination, with evidence indicating winter driving conditions. Furthermore, appellant argued this position to the jury and the jury was not persuaded. Based on the record, we do not find the jury clearly lost its way in rejecting

13.

the proposition that Boyer's continued pursuit demonstrated a lack of evidence of the substantial risk of serious physical harm.

{¶ 29} Finally, appellant argues that there was no evidence of a risk of harm to others, outside of appellant and Boyer, because the pursuit occurred in the early morning hours on deserted country roads. The absence of additional risks, however, is not the same as no risk. *See Owens* at ¶ 32 ("[T]he presence of pedestrians, heavy traffic, or adverse weather conditions would have *increased* the risk – their absence did not *eliminate* the risk."). The state introduced evidence showing the driving conditions were dangerous, along with evidence of the potential for a horrific crash, should a vehicle lose control on those roads at the speeds appellant traveled. Appellant, himself, testified that his prolonged drug use caused paranoia and prevented him from recognizing a police pursuit, even after he noted the lights and siren, and that he was impaired. We "may also consider that appellant created a substantial risk of physical harm to the officers themselves." *Owens* at ¶ 29.

{¶ 30} Considering the record, we do not find that this is the exceptional case in which the jury lost its way in weighing the evidence. The evidence demonstrated a high-speed chase over narrow country roads in wintry conditions, with testimony regarding the type of accident that results from a car losing control and landing in the steep ditches lining the roads. While appellant testified he remained in control of his vehicle, the jury

14.

was free to give other evidence greater weight in resolving the issue. Accordingly, we find appellant's sole assignment of error not well-taken.

### III.  Conclusion

{¶ 31} Based on the foregoing, we affirm the judgement of the Ottawa County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.   _____
           JUDGE

Gene A. Zmuda, J.

          _____
Myron C. Duhart, P.J.      JUDGE
CONCUR.

          _____
           JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.