**[Cite as *State v. Mull*, 2025-Ohio-403.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                         Court of Appeals No.  WD-24-060

        Appellee                  Trial Court No. 2022 CR 0483

v.

Jeremy W. Mull                  **<u>DECISION AND JUDGMENT</u>**

        Appellant               Decided: February 7, 2025

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from the judgment by the Wood County Court of Common Pleas, General Division, which sentenced appellant, Jeremy W. Mull, to an aggregate indefinite prison term of 13 to 17 years after a jury found him guilty of felonious assault, and after the trial court found him guilty of the repeat violent offender specification. For the reasons set forth below, this court affirms the trial court's judgment.

## I. Background

{¶ 2} On November 17, 2022, a Wood County Grand Jury issued a true bill indictment as subsequently amended, against appellant for felonious assault, a violation of R.C. 2903.11(A)(1) and a second-degree felony pursuant to R.C. 2903.11(D)(1)(a), with a repeat violent offender specification under R.C. 2941.149(A). R.C. 2903.11(D)(1)(a) defines "felonious assault" to include a violation of R.C. 2903.11(A)(1), which states, "No person shall knowingly . . . cause serious physical harm to another[.]" R.C. 2941.149(D) defines "repeat violent offender" having the meaning in R.C. 2929.01(CC), which relevantly requires: (1) appellant being sentenced for a second-degree felony that is an offense of violence, and (2) appellant previously convicted of or pleaded guilty to a second-degree felony that is an offense of violence. Appellant was previously convicted of a second-degree felony on October 7, 2022, and the sentencing entry was journalized on December 20, 2022. *State v. Mull*, 2024-Ohio-370, ¶ 2-5 (6th Dist.), *appeal not allowed,* 2024-Ohio-1974. Thus, both requirements of R.C. 2929.01(CC) were met. *See State v. Scott*, 2020-Ohio-4854, ¶ 45-46 (6th Dist.).

{¶ 3} Appellee, state of Ohio, alleged the offense in this matter occurred on October 23, 2022, at the Wood County jail, where both appellant and the victim were incarcerated in the same housing unit. Appellant repeatedly punched the victim in the face causing serious physical harm requiring hospital treatment. The victim was diagnosed with a bleeding cut on his nose, a swollen and bruised right eye, orbital bone fracture, head trauma, sluggish pupil, blurry vision, marks on the neck, and a headache

2.

leading to a concussion protocol. Appellant pled not guilty to the offense, and discovery commenced in anticipation of a jury trial.

{¶ 4} On June 28, 2023, appellant filed a motion to dismiss the repeat offender specification, which appellee opposed. Then on October 10, appellant waived a jury trial for the repeat violent offender specification.

{¶ 5} The two-day jury trial commenced on October 16, 2023, and the jury heard testimony from five witnesses, including appellant, and received 14 exhibits admitted into evidence. On October 17, the jury found appellant guilty of felonious assault, a violation of R.C. 2903.11(A)(1) and a second-degree felony pursuant to R.C. 2903.11(D)(1)(a).

{¶ 6} Following the jury conviction, the trial court immediately held the trial on the repeat violent offender specification pursuant to R.C. 2949.149(B). The parties rested on their briefs. Citing *State v. Christian*, 2020-Ohio-828, appellant argued his pending appeal of his second-degree felony offense in case No. 2021CR419 meant "the potential reversal of the conviction, alteration of the sentence, and remand for trial – all of which undermine the finality of the conviction upon which the instant RVO specification rests." Appellant stipulated to the admission of the certified copies of his prior conviction and sentence in case No. 2021CR419.

{¶ 7} In response, appellee argued that the trial court's judgment of conviction and sentence in case No. 2021CR419, journalized on December 20, 2022, is the final order subject to the then-pending appeal, citing *State v. Lester*, 2011-Ohio-5204, paragraph one

3.

of the syllabus; *State v. Chamberlain*, 177 Ohio St. 104 (1964), syllabus; *State v. Whitfield*, 2010-Ohio-2, ¶ 13; R.C. 2505.03(B); and *State v. Haeft*, 2022-Ohio-4304, ¶ 15 (6th Dist.). Appellee argued appellant's reliance on *Christian* is misplaced because appellant's conviction and sentence in case No. 2021CR419 for a second-degree felony had not been vacated on direct appeal at the time, on October 17, 2023, he was convicted of another second-degree felony. *Christian* at ¶ 1. Thus, appellant's conviction on the repeat violent offender specification was proper, and the trial court should deny appellant's motion to dismiss.

{¶ 8} The trial court then denied appellant's motion to dismiss and determined that appellant was guilty of repeat violent offender status under R.C. 2941.149 because, "He has a past F2 conviction for a violent offense, and he was convicted today of a violent offense that is a felony of the second degree with the felonious assault."

{¶ 9} As journalized on November 3, 2023, the trial court sentenced appellant as follows: (1) for felonious assault, a violation of R.C. 2903.11(A)(1) and a second-degree felony pursuant to R.C. 2903.11(D)(1)(a), a mandatory, minimum definite prison term of eight years to a maximum indefinite term of 12 years; and (2) for the repeat violent offender specification, a violation of R.C. 2941.149(A), a mandatory, definite prison term of five years. The trial court ordered the sentences to be served consecutively for a total aggregate sentence of a mandatory minimum definite prison term of 13 years to a maximum indefinite term of 17 years. The trial court further ordered the sentence "shall

4.

run concurrent to the prison term he is currently serving in Wood County case numbers 2022CR0119 and 2021CR0419."

{¶ 10} Appellant timely appealed, setting forth two assignments of error:

1. The jury's verdict was against the manifest weight of the evidence presented at trial.

2. Appellant was sentenced to a mandatory ODRC term and a consecutive RVO term predicated on a conviction that was overturned on appeal.

## II. Manifest Weight of the Evidence

{¶ 11} "To evaluate a manifest-weight claim, we must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of all the witnesses." *State v. McKelton*, 2016-Ohio-5735, ¶ 328. We must decide if the jury clearly lost its way in resolving conflicts in the evidence to create a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. *Id.* A manifest-weight claim questions the effect of the evidence in inducing belief of appellant's guilt by questioning whether the jury could find the inclination of a greater amount of credible evidence was admitted at trial to sustain that decision than not. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The discretionary power to grant a new trial is in the exceptional case in which the evidence weighs heavily against the conviction. *Id.* The unanimous concurrence of all three judges of a court of appeals panel is required to overturn, on the weight of evidence, a judgment that results from a jury. *Id.* at 389.

5.

{¶ 12} Appellant's first assignment of error challenges the credibility of witness testimony and appellee's burden of persuasion at trial to prove beyond a reasonable doubt that appellant did not use the force during the October 23, 2022 incident in self-defense. R.C. 2901.05(B)(1).

{¶ 13} "Self-defense is an affirmative defense whereby the defendant, in essence, admits to the facts of the state's case but offers additional facts that justify or excuse the defendant's use of force." *Maumee v. Yeager,* 2024-Ohio-858, ¶ 65 (6th Dist.). Furthermore:

> To support a claim of self-defense involving the use of non-deadly force, the defendant must prove, by a preponderance of the evidence, that: (1) he was not at fault in creating the situation giving rise to the altercation; and (2) he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm.

*Id.* at ¶ 67.

{¶ 14} Under R.C. 2901.09(B), appellant argues he had no duty to retreat before using non-deadly force in self-defense where appellant had a lawful right to be. Appellant also challenges the jury's role by arguing, "the jury did not fully consider and properly weigh all the evidence prior to determining his guilt on the charge of felonious assault," such as his testimony of feeling threatened by the victim because he "suffers from PTSD from his prior ODRC experiences." Appellant "testified that he did not create the situation that gave rise to his use of non-deadly force; [the victim] did by his demeanor and by violating Appellant's personal space in the dorm bathroom. [The victim's]

6.

menacing actions reasonably placed Appellant in imminent fear of being struck and injured."

{¶ 15} Citing *Yeager* at ¶ 64-70; *State v. Mitchell*, 2023-Ohio-3543, ¶ 37 (6th Dist.), *appeals not allowed,* 2024-Ohio-163 and 2024-Ohio-4919; and *State v. Teal*, 2017-Ohio-7202, ¶ 53 (6th Dist.), appellee responds there was no trial court error because appellant did not meet his burden of proving, by a preponderance of the evidence, a valid self-defense claim for three reasons: (1) the evidence presented at trial included the housing unit videos showing three views of the areas surrounding the bathroom leading up the incident inside the bathroom which collectively "illustrates [appellant] was the instigator"; (2) the alleged provocation by the victim was "only words," which are "not sufficient provocation to trigger a self-defense response" and (3) the victim's "injuries belie Mull's story that all he did was slap the victim" once such that the actual physical response that hospitalized the victim was not proportionate to mere words.

{¶ 16} Ultimately, over appellee's objection, the trial court determined that it would give the self-defense jury instruction based on the "pretty low threshold" that appellant brought forward evidence that tends to suggest there was self-defense response when interpreted in the light most favorable to the defendant. *State v. Palmer*, 2024-Ohio-539, ¶ 1 (to receive the self-defense jury instruction, the defendant's burden of production is de minimis). The trial court then gave the following instruction to the jury on self-defense.

> The Defendant is asserting an affirmative defense known as self-defense. A person is allowed to use non-deadly force in self-defense. The

State must prove beyond a reasonable doubt that the Defendant, when using non-deadly force, did not act in self-defense. To prove that the Defendant's use of non-deadly force was not in self-defense, the State must prove beyond a reasonable doubt at least one of the following:

A, at fault. The Defendant was at fault in creating the situation giving rise to the use of non-deadly force against [the victim]. The Defendant did not act in self-defense if the State proved beyond a reasonable doubt that the Defendant was at fault in creating the situation, incident or argument that resulted in the injury. The Defendant was at fault if the Defendant was the initial aggressor and, one, [the victim] did not escalate the situation, incident or argument by being the first to use or attempt to use or attempt to use non-deadly force, or, two, the Defendant provoked [the victim] into using force.

B, reasonable grounds. The Defendant did not have reasonable grounds to believe that he was in imminent or immediate danger of bodily harm.

Or C, honest belief. The Defendant did not have an honest belief, even if mistaken, that he was in imminent or immediate danger of bodily harm, or, tests for reasonable grounds and honest belief. In deciding whether the Defendant had reasonable grounds to believe and an honest belief that he was in imminent or immediate danger of death or great bodily harm, you must put yourself in the position of the Defendant, with his characteristics, his knowledge or lack of knowledge, and under the circumstances and conditions that surrounded him at the time. You must consider the conduct of [the victim] and decide whether his acts and words caused the Defendant to reasonably and honestly believe that the Defendant was about to be killed or receive great bodily harm. In determining whether the Defendant using force in self-defense reasonably believed that the force was necessary to prevent injury, loss or risk of life or safety, you may not consider the possibility of retreat by the Defendant. Words alone do not justify the use of force. Resort to force is not justified by abusive language, verbal threats or other words, no matter how provocative.

D, unreasonable force. The Defendant used unreasonable force. A person is allowed to use force that is reasonably necessary under the circumstances to protect himself from an apparent danger. For you to fund the Defendant guilty, the State must prove beyond a reasonable doubt that the Defendant used more force than reasonably necessary, and that force used was greatly disproportionate to the apparent danger. In deciding whether the force used was greatly disproportionate to the apparent danger,

you may consider whether the force used shows revenge or a criminal purpose.

{¶ 17} We agree with the jury that appellee met its responsive burden to prove beyond a reasonable doubt that appellant did not act in self-defense. Under R.C. 2901.05(E), "'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs."

{¶ 18} Prior to appellant testifying in his defense, appellee's witnesses outlined what happened.

{¶ 19} Sergeant Tracie Kester-Stanford testified that on October 23, 2022, she began the investigation of the fight and saw no defensive wounds on appellant following the incident with the victim, but saw the victim's injuries to his face.

{¶ 20} The sergeant confirmed there are three surveillance cameras in the common areas of the housing unit, but not inside the bathroom or sleep area. The videos, which do not record audio, were played for the jury and admitted into evidence without objection. They showed the victim entering the bathroom from one entrance, then appellant turning around from the direction he was walking to enter the bathroom from another entrance. Within six-and-one half minutes, the victim left the bathroom and sat down in the adjacent recreation room holding his face. A deputy sheriff is later seen standing in the bathroom doorway speaking with appellant. The deputy then took the victim to an interview room for questioning. Within five minutes, the video shows Sergeant Stanford

9.

entering the housing pod with another deputy, and Sergeant Stanford spoke with the first deputy.

{¶ 21} Appellant told Sergeant Stanford that the argument arose because he was annoyed by the victim "constantly taking the chairs in the dorm and propping the bathroom doors open, creating some suction that made noise in the sleep area." Appellant insisted that he did not hit the victim, and the victim did not hit him, although later appellant "said something along the lines of, I only smacked him a little bit." Other inmates in the housing unit were interviewed, but no one was willing to write a statement about the incident. Meanwhile, the victim was transported to the hospital to treat his injuries.

{¶ 22} Sergeant Brittany Brown testified at trial that on October 24, 2022, she conducted the disciplinary hearing for the October 23 fighting incident because of the jail's zero-tolerance policy on inmate fighting, which if found guilty, has the automatic penalty of 15 to 30 days of lockdown in a cell for 23 hours per day. During his disciplinary hearing, appellant reiterated that the victim did not touch him, and he did not touch the victim. He admitted to only yelling and screaming at the victim and explained that the victim's injuries were from hitting a paper towel dispenser on the bathroom wall. The sergeant determined from her investigation that appellant was not "innocent in the situation" and ordered appellant to serve 15 days of lockdown starting immediately.[1]

---

[1] After the victim returned from the hospital, he received the same discipline at a separate disciplinary hearing on October 26, 2022, conducted by Sergeant Heather Cleveland, who also testified at the trial.

Later, appellant jokingly admitted to the sergeant to "roughing up" the victim. Also introduced at trial was evidence of appellant admitting to "slapping up" the victim in a recorded phone call from the jail.

{¶ 23} When appellant testified, the following was his version of what happened on October 23, 2022. The victim interrupted appellant's sleep by propping open one bathroom door, which made the other bathroom door slam shut. Appellant found that disrespectful. He got out of bed, put the chair inside the bathroom, closed the bathroom door, and started to return to sleep. On his way to bed, he abruptly turned around to enter the bathroom. When asked why he returned to the bathroom, appellant answered he was concerned about the heating and ventilation of the housing unit. Appellant admitted not telling any deputy or sergeant that all the prior week he was allegedly in fear for his safety because of a run-in with the victim over television use.

{¶ 24} Appellant then testified that after entering the bathroom he "nicely" asked the victim not to put the chair in the door. In response, the victim "made the statement, do something, bitch, and then approached aggressively to me. This is the point where I struck him, but I open-handed struck him." Appellant admitted he struck the victim first and that his single, open-hand slap caused all of the victim's injuries requiring hospitalization. He told Sergeant Brown he did not "punch" the victim because he distinguishes an open-hand slap from a closed-fist punch. "To me, that's a distinct difference. They might not see it that way, and the facility, obviously, as you know, has a

11.

zero-tolerance policy. My hope was that if we both say there's not a physical altercation, we don't have to do our lockdown[.]"

{¶ 25} Appellant admitted not telling Sergeant Brown he acted in self-defense because "they really don't see it that way." In fact, appellant first raised the issue of self-defense at trial as his third version of the incident.

> Q: And Sergeants Brown and [Stanford] were there and they said, look, you know, you're in [lockdown] because you roughed up [the victim], right?
> A: Yes, ma'am.
> Q: And you, kind of, then said, yeah, yeah, chuckled, kind of smiled, yeah, I did, I did. That's what you answered, right?
> A: I answered, yeah, that I did.
> Q: And, of course, you heard the phone call we played that you also admitted to smacking him upside the head, I believe were the words you said?
> A: Yes, ma'am.
> Q: So we've had two stories from you now, is that correct?
> A: Yes, ma'am.
> Q: So you didn't hit him at all, and then you did hit him –
> A: Yes, ma'am.
> Q: -- correct? Okay.
> . . .
> Q: You had 24 hours to prepare –
> A: Yes, ma'am.
> Q: -- if you wanted. But you didn't choose to do that, you just went right in –
> A: Yes, ma'am.
> Q: -- to the [disciplinary] hearing and said, nope, I didn't hit him? And then, later you said you did hit him. And then, now, today, you're saying, I hit him, but it's because I was scared of him, right?
> A: For my safety, yes.
> . . .
> Q: Despite the fact that we've heard three separate stories from you, we're supposed to believe you now, correct?
> A: I hope so, yes.
> . . .

12.

Q: Your story just keeps changing depending on your circumstances then, correct?

A: I guess, yeah.

{¶ 26} At trial, the jury heard all the testimony and received all evidence. The jury, as the trier of fact, was in the best position to determine the weight and credibility of the evidence, including inconsistencies, along with witness manner and demeanor, and was in the sole position to believe or disbelieve all or any of the testimony presented at trial. *State v. Gunn*, 2021-Ohio-2253, ¶ 41 (6th Dist.). Appellant argues his felonious assault of the victim was excused by self-defense. We find that any rational fact-finder could have found the inclination of a greater amount of credible evidence was admitted at trial than not to induce the jury's belief of proof beyond a reasonable doubt that appellant did not act in self-defense. We find the jury did not clearly lose its way in resolving conflicts in the evidence to create a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered.

{¶ 27} Appellant's first assignment of error is not well-taken.

### III. Repeat Violent Offender Specification

{¶ 28} In support of his second assignment of error, appellant argues that this court's reversal of his conviction in case No. 2021CR419 automatically vacates his mandatory five-year sentence for the repeat violent specification in this matter, citing R.C. 2953.07. Appellant does not argue for reversal of his entire sentence; only for the portion of his sentence for his repeat violent offender status that was predicated on a second-degree conviction that we eventually reversed and remanded. Yet, appellant

13.

admits this court's decision reversing and remanding his prior conviction because of that trial court's error accepting his guilty plea, *Mull*, 2024-Ohio-370, at ¶ 20 (6th Dist.), was decided on February 2, 2024, which is over three months after the November 3, 2023 journalized sentencing entry. The trial court's November 3, 2023 decision was not predicated on this court's February 2, 2024 decision. We also disagree that R.C. 2953.07 mandates reversal in this matter.

{¶ 29} In response, appellee argues that as of November 3, 2023, appellant was properly convicted of and sentenced for his status as a repeat violent offender, citing R.C. 2929.01(CC), 2929.14(B)(2)(a)(i), 2929.14(B)(2)(b)(i), and 2941.149. Appellee argues the situation in *State v. Dodson*, 2012-Ohio-5576, ¶ 65-67 (3rd Dist.) is analogous to have this court affirm appellant's sentence. We disagree that *Dodson*'s unconstitutional-as-applied challenge to R.C. 2929.01(CC) is analogous, since there is no constitutional challenge to appellant's repeat violent offender status determination and the sentence for it as of November 3, 2023. Alternatively, appellee argues this court may vacate the repeat violent offender specification sentence while affirming the remainder of the sentence, citing *State v. Halka*, 2021-Ohio-149, ¶ 81 (6th Dist.); *State v. Ellis*, 2019-Ohio-427, ¶ 18 (6th Dist.); *State v. Rush*, 2013-Ohio-727, ¶ 19 (6th Dist.); and App.R. 12(A)(1)(a). We do not find the cases cited by appellee to be our guide in this matter.

{¶ 30} Appellee's previous arguments opposing appellant's motion to dismiss are a better guide. The trial court's judgment of conviction and sentence in case No. 2021CR419 was a final order and, as of the November 3, 2023 sentencing entry, was not

14.

yet vacated on appeal due to that trial court's error accepting appellant's guilty pleas. As such, appellant's conviction on, and sentencing for, the repeat violent offender specification was proper, and we find no trial court error. We decline to speculate on the outcome, or of the remedies appellant may pursue, on our remand of case No. 2021CR419.

{¶ 31} Appellant's second assignment of error is not well-taken.

### IV. Conclusion

{¶ 32} On consideration whereof, the judgments of conviction and sentencing by the Wood County Court of Common Pleas, General Division, are affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.              _____
                                              JUDGE
Gene A. Zmuda, J.
CONCUR.                           _____
                                              JUDGE


Christine E. Mayle, J.            _____
CONCURS AND WRITES                            JUDGE
SEPARATELY.

**MAYLE, J., Concurring**

{¶ 33} I agree with the majority's resolution of the first assignment of error raised by appellant, Jeremy Mull, and agree that we should affirm the trial court's imposition of an additional prison term for the repeat violent offender specification. I write separately to clarify why I would affirm the RVO sentence.

{¶ 34} To briefly recap, in this case (trial court case No. 2022CR0483 ("case 483")), Mull was indicted on one count of second-degree felonious assault with a repeat violent offender specification. A "repeat violent offender" is a person who, as relevant here, (1) "is being sentenced for committing . . . any felony of the first or second degree that is an offense of violence, . . ." and (2) "previously was convicted of or pleaded guilty to an offense described in [R.C. 2929.01](CC)(1)(a) . . . [,]" i.e., "any felony of the first or second degree that is an offense of violence . . . ." R.C. 2929.01(CC). Felonious assault and endangering children under R.C. 2919.22(B)(1) are offenses of violence. R.C. 2901.01(A)(9)(a).

{¶ 35} On October 17, 2023, a jury convicted Mull of felonious assault in case 483, and the trial court convicted him of the RVO specification. The state relied on a December 20, 2022 judgment entry from a different Wood County case, trial court case No. 2021CR0419 ("case 419"), to show that Mull was previously convicted of endangering children in violation of R.C. 2919.22(B)(1), a second-degree felony.

{¶ 36} During the trial court proceedings, Mull moved to dismiss the RVO specification "for lack of prior conviction or guilty plea to an offense described in [R.C.]

16.

2929.01(CC)(1)(a) . . ." because his direct appeal of case 419 was pending before this court. He reasoned that the possibility of his child-endangering conviction being overturned on appeal "undermine[d] the finality of the conviction upon which the instant RVO specification rests[,]" and argued that he could not be convicted of the RVO specification unless the underlying conviction was final in the sense that all possible appeals had concluded. *See State ex rel. Walker v. State*, 2015-Ohio-1481, ¶ 10, citing *Allen v. Hardy*, 478 U.S. 255, 257-258 (1986), fn. 1 ("a conviction is final when the judgment of conviction has been rendered, the availability of an appeal has been exhausted, and the time for a petition for certiorari has elapsed"). Otherwise, Mull argued, "the specification in the indictment lacks the foundation necessary to support the factual finding under [R.C.] 2941.149(B)" that Mull is a repeat violent offender. The trial court denied the motion and proceeded to convict Mull of the RVO specification based on his child-endangering conviction in case 419 and impose additional prison time because of the specification.

{¶ 37} On February 2, 2024—three months *after* Mull was sentenced in case 483, and while this appeal was pending—we reversed Mull's convictions in case 419 because the trial court did not inform him at his plea hearing that he was potentially facing additional prison time as a result of violating his postrelease control from a third criminal case. *State v. Mull*, 2024-Ohio-370, ¶ 17-18 (6th Dist.). Mull now argues (in what seems to be a case of first impression) that we should vacate the RVO specification because the

17.

conviction underlying it no longer exists. However, due to the timing of the events in this case, he cannot raise this issue on direct appeal.

{¶ 38} That is because the plain language of R.C. 2929.01(CC) shows that the trial court did not err by finding that Mull was a repeat violent offender based on the information before it at the time. The statute defines a repeat violent offender as someone who "previously was convicted of or pleaded guilty to . . ." an offense of violence. "Was convicted" is in the past tense, indicating "an act, state, or condition *that occurred or existed at some explicit or implicit point in the past . . . .*" (Emphasis added.) Garner, *The Chicago Guide to Grammar, Usage, and Punctuation,* § 174, at 95 (2016). When the trial court made its finding on the RVO specification, Mull "was convicted" of the child-endangering charge in case 419—i.e., his conviction "occurred or existed at some . . . point in the past . . . ." *Id.* Thus, under a plain reading of R.C. 2929.01(CC), the trial court did not err by using a past conviction *that was valid at the time* to find that Mull met the definition of a repeat violent offender. Holding otherwise would equate to demanding that the trial court try to predict the outcome of a pending appeal, which is both unreasonable and absurd. But that does not change the fact that Mull's second-degree felony of violence conviction—the underpinning of the RVO specification—no longer exists. *See State v. Nichter*, 2019-Ohio-279, ¶ 22 (10th Dist.) ("The effect of a reversal and an order of remand is to reinstate the case to the docket of the trial court in precisely the same condition that obtained before the error occurred." (Internal quotations omitted.)).

18.

{¶ 39} Under App.R. 12(B), however, this court is only able to modify or reverse a trial court's judgment if we find that "the trial court *committed error* prejudicial to the appellant . . . ." (Emphasis added.) Here, the trial court did not "commit[] error" by relying on a valid conviction to reach its verdict on the RVO specification. Because of that, we do not have the authority to modify or reverse his conviction and sentence for the RVO specification on direct appeal.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.